IN THE SUPREME COURT OF TEXAS

















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0728

════════════

 

Texas Department of
Protective and Regulatory Services, Petitioner

 

v.

 

Mega Child Care, Inc., Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the First District of Texas

════════════════════════════════════════════════════

 

 

 

Argued on September 11, 2003


 

 

 

Justice Smith delivered the opinion of
the Court, in which Chief Justice Phillips,
Justice Hecht, Justice O=Neill, Justice Jefferson, Justice Wainwright and Justice Brister joined.

 

Justice Owen filed a concurring
opinion.

 

Justice Schneider did not participate
in the decision.

 

In
Texas, a person may obtain
judicial review of an administrative action only if a statute provides a right
to judicial review, or the action adversely affects a vested property right or
otherwise violates a constitutional right. 
See Cont=l
Cas. Ins. Co. v. Functional Restoration Assocs.,
19 S.W.3d 393, 397 (Tex. 2000); Firemen=s & Policemen=s Civil Serv.
Comm=n
v. Kennedy, 514 S.W.2d 237, 239 (Tex.
1974); City of Amarillo
v. Hancock, 239 S.W.2d 788, 790 (Tex.
1951).

The
question in this case is whether a person who holds a child-care facility
license may obtain judicial review of an administrative decision to revoke the
license.  The court of appeals held that
the holder of a child-care facility license has a statutory right to judicial
review.  We will affirm.

I

In
1975, the 64th Legislature enacted the Administrative Procedure and Texas
Register Act (APTRA), the first comprehensive statute governing the practices
and procedures of Texas
administrative agencies.  See
APTRA, 64th Leg., R.S., ch. 61, 1975 Tex.
Gen. Laws 136 (compiled as Tex. Rev. Civ. Stat. art. 6252-13a).  Section 19 of the APTRA was titled AJudicial Review of Contested Cases,@ and subsection (a) thereof provided: AA person who has exhausted all
administrative remedies available within the agency and who is aggrieved by a
final decision in a contested case is entitled to judicial review under
this Act.  This section is cumulative of
other means of redress provided by statute.@  Id. '
19(a), at 146 (emphasis added).

In
1993, the APTRA was codified in the Government Code.  The part of the APTRA concerning the Texas
Register was transferred to Chapter 2002. 
The remainder of the APTRA was transferred to Chapter 2001 and
designated the Administrative Procedure Act (APA).  Section 19(a) of the APTRA was divided and
placed in two different sections of the APA.  Subchapter G of the APA,
titled AContested
Cases: Judicial Review,@
contains sections 2001.171 through 2001.178. 
Section 2001.171 provides: AA
person who has exhausted all administrative remedies available within a state
agency and who is aggrieved by a final decision in a contested case is
entitled to judicial review under this chapter.@  Tex.
Gov=t Code '
2001.171 (emphasis added).  And section
2001.178 provides: AThis
subchapter is cumulative of other means of redress provided by statute.@ 
Id. ' 2001.178.

The
Third Court of Appeals has Arepeatedly
held that [section 2001.171 of the APA] is a
procedural provision that does not confer independent subject matter
jurisdiction on the district court.@  Eldercare Props., Inc. v. Tex.
Dep=t
of Human Servs., 63 S.W.3d 551, 557 (Tex. App.CAustin 2001, pet. denied).  For example, in Employees Retirement
System v. Foy, 896 S.W.2d 314, 316 (Tex. App.CAustin
1995, writ denied), the court stated: ANotwithstanding
the generality of section 2001.171, the legislature intended the
judicial-review provisions of the APA to be
procedural only; they do not create a right to judicial review where the right
does not exist by reason of another statute specifically granting the right.@ 
In contrast, before the provision was codified, the Tenth and Fourteenth
Courts of Appeals concluded that section 19(a) of the APTRA provided a right to
judicial review.  See Tex. Health
Facilities Comm=n
v. W. Tex. Home Health Agency, 588 S.W.2d 655, 657 (Tex. Civ. App.CWaco
1979, no writ); Moore v. Tex. Employment Comm=n, 565 S.W.2d 246, 247 (Tex. Civ. App.CHouston
[14th Dist.] 1977, no writ).

In
this case, a divided panel of the First Court of Appeals held that section
2001.171 of the APA provides a right to
judicial review.  81 S.W.3d 470.  We granted review to resolve the conflict
among the courts of appeals regarding the proper interpretation of section
2001.171.  Based on its plain language,
we conclude that section 2001.171 provides an independent right to judicial
review of a contested-case decision when the agency=s
enabling statute neither specifically authorizes nor prohibits judicial review
of the decision.

II

On
April 28, 1999,
Mega Child Care, Inc. filed suit against the Texas Department of Protective and
Regulatory Services (TDPRS), a state agency subject to the APA.  The petition for judicial review, which was
filed in a Harris County
district court, stated:

 

On
or about July 22, 1997,
the agency notified Plaintiff to appear before it and show cause why Plaintiff=s license to operate a Day Care
Facility should not be revoked as a result of alleged failure to comply with
minimum standards.

 

After
a hearing on November 19,
 1998, the agency made its decision adverse to Plaintiff and refused
to grant a timely motion for rehearing. 
All conditions precedent to Plaintiff=s
right of judicial review of agency=s
decision having been performed or occurred, Plaintiff is entitled to trial de
novo under the authority of Section 19(c) of Article 6252-13a, Revised Civil
Statutes of Texas.

 

On
May 24, 1999,
the TDPRS filed Defendant=s
Plea to the Jurisdiction, Special Exceptions, and Original Answer.  Part I of the pleading, titled APlea to the Jurisdiction,@ stated:

 

Defendant
asserts that this court should dismiss this suit because it lacks subject
matter jurisdiction to review the final decision of Defendant which revoked
Plaintiff=s license
to operate a day care due to numerous noncompliances
with the Minimum Standards for Day Care Facilities.  A review of the regulations and the statutes
that govern this cause reveals that there has been no provision made by the
legislature for judicial review of the decision of the Department after a full
evidentiary hearing has been held before an administrative law judge, who sits
as the sole fact-finder.

 

Notwithstanding
the generality of section 2001.171 of the Administrative Procedure Act (APA),
formerly Article 6252-13a, '
19(a) of the Texas Revised Civil Statutes, the legislature intended the
judicial review provisions of the APA to be
procedural only.  They did not create a
right to review where the right does not exist by another statute that
specifically grants that right. 
[citation to Third Court of Appeals=s
precedent].

 

For
the foregoing reasons, this court has no subject matter jurisdiction over
Plaintiff=s
Original Petition which seeks judicial review of the Department=s decision dated July 23, 1998.  Accordingly, Plaintiff=s
petition must be dismissed for want of jurisdiction.

 

Part II of the
pleading contained a general denial.  In
part III, the TDPRS asserted Aits affirmative defense of sovereign
immunity.@  Part IV set forth special exceptions.[1]

On
August 30, 1999,
the trial court granted the TDPRS=s
plea to the jurisdiction and dismissed the suit.  On October 6, 1999, the trial court denied Mega Child Care=s motion for new trial.  No hearing was held on either the plea or the
motion.  On November 3, 1999, Mega Child Care
filed a notice of appeal.

In
the court of appeals, Mega Child Care asserted for the first time the
additional argument that the administrative decision adversely affected a
vested property right and, therefore, it had an inherent right to judicial
review.  The TDPRS, in its court of
appeals brief, asserted that Ano
statute authorizes judicial review of the Department=s
decision or SOAH=s order@ and that Mega Child Care Afailed to raise its constitutional
argument in the court below, therefore it has waived its claim that the
Department=s
decision violated its due process rights.@  The TDPRS did not raise or otherwise discuss
sovereign immunity in its court of appeals brief.

On
June 28, 2002,
the court of appeals reversed and remanded, holding that Mega Child Care had Aexhausted all available administrative
remedies and was entitled to judicial review@
under section 2001.171 of the APA.  81 S.W.3d at 473.  The majority did not discuss the Third Court
of Appeals=s
precedent construing section 2001.171.  The
dissent asserted that the court should follow the Third Court of Appeals=s precedent and hold that Mega Child
Care had no statutory right to judicial review. 
Id. at 477.  In addition, the dissent agreed with the
TDPRS that Mega Child Care had waived its constitutional claim.  Id.
at 477-78.  Accordingly, the dissent
would have affirmed the trial court=s
judgment.  Neither the majority nor the
dissent discussed the doctrine of sovereign immunity.

In
its petition for review, the TDPRS asserted that section 2001.171 of the APA
neither grants Aan
aggrieved party a substantive right to judicial review of an agency contested
case order@ nor
waives sovereign immunity.  In addition,
the TDPRS argued that because section 19(a) of the APTRA was not substantively amended
in 1993 when it was codified, Athe
Legislature has accepted the Third Court of Appeals=
construction.@[2]  Finally, the TDPRS contended that Mega Child
Care had Awaived
any claim of an inherent right to judicial review by not raising the issue in
the trial court.@  In its response, Mega Child Care asserted
only that it has a statutory right to judicial review under section 2001.171.

In
its brief on the merits, the TDPRS generally reiterated its previous arguments
regarding section 2001.171 of the APA.[3]  Relying on the Third Court of Appeals=s precedent, the TDPRS continued to
assert that A[t]he
Legislature has not expressed a clear intent to waive immunity and provide a
substantive right for judicial review in the APA.@ 
In addition, the TDPRS asserted for the first time that the intent of
its 1997 sunset review legislation was to prohibit judicial review of
administrative decisions revoking a child-care facility license.

In
the statement-of-the-case section of its brief on the merits, Mega Child Care asserted
that Ait has a
statutory and constitutional right to judicial review.@  However, the three-page argument section of
the brief did not contain any discussion regarding the asserted constitutional
right to judicial review.  In addition,
the brief failed to address the issue regarding the intent of the TDPRS=s 1997 sunset review legislation.

After
the parties filed briefs on the merits, the Court received two amicus curiae
briefs.  The Texas Licensed Child Care
Association (TLCCA), a statewide organization of child-care businesses,
submitted a substantial brief in support of Mega Child Care.  The TLCCA asserted that A[t]he plain words suggest that [section
2001.171 of the APA] does more than
establish a procedure for judicial review; the section creates the right of
judicial review for those who qualify.@[4]  In addition, the TLCCA contended that Athere is no legislative history from
the 1997 legislative session revealing any intention to eliminate judicial
review of a child care license revocation.@  Ron Beal, author of Texas Administrative
Practice and Procedure,[5]
submitted a four-page letter brief in support of Mega Child Care.  He joined the TLCCA=s
brief but wrote separately to emphasize his view that Athe
legal theory and analysis of the Austin Court of Appeals that established the
doctrine within that circuit that section 2001.171 did not independently confer
subject matter jurisdiction on the district court was and is erroneous.@

Both
the TDPRS and the TLCCA submitted post-submission briefs.  In its brief, the TDPRS reasserted its
legislative acceptance argument, argued that section 2001.171 of the APA
Acan fairly be read to set forth
necessaryCbut not
sufficientCconditions
that must be satisfied to qualify for any judicial review that the Legislature
has provided in the enabling statute,@
and contended that the court decisions from states with similar judicial review
provisions were Amixed.@ 
In its brief, the TLCCA asserted:

 

Of
the 25 states that have the same APA
language as the Texas APA section 2001.171Cthat a party to a contested case is Aentitled to judicial review@Cthe
Austin Court of Appeals is the only state appellate court, in Texas or
elsewhere, that interprets that language to be merely procedural and as being
insufficient to confer jurisdiction on the court unless review is authorized
under another statutory provision.

 

In
this Court, the TDPRS concedes that Mega Child Care exhausted all available
administrative remedies and that Mega Child Care is aggrieved by a final
decision in a contested case.  However,
the TDPRS asserts that Mega Child Care is not entitled to judicial review of
the administrative decision to revoke its child-care facility license.  Based on the following analysis, we disagree.

III

Several
longstanding rules of statutory interpretation govern our resolution of this
case.

When
interpreting a statutory provision, a court must ascertain and effectuate the
legislative intent.  See Crown Life
Ins. Co. v. Casteel, 22 S.W.3d 378, 383 (Tex. 2000) (AThe primary rule in statutory
interpretation is that a court must give effect to legislative intent.@); Ex parte
Roloff, 510 S.W.2d 913, 915 (Tex. 1974) (A[I]t is the duty of the court to
ascertain the legislative intent.@);
Magnolia Petroleum Co. v. Walker, 83 S.W.2d 929, 934 (Tex. 1935) (A[T]he dominant rule to be observed is
to give effect to the intention of the Legislature.@);
Mills County v. Lampasas County, 40 S.W. 403, 404 (Tex. 1897) (AStrictly speaking, there is but one
rule of construction, and that is that the legislative intent must govern.  All other canons of interpretation, so
called, are but grounds of argument resorted to for the purpose of ascertaining
the true meaning of the law.@).

If
an ambiguous statute that has been interpreted by a court of last resort or
given a longstanding construction by a proper administrative officer is
re-enacted without substantial change, the Legislature is presumed to have been
familiar with that interpretation and to have adopted it.  See Grapevine Excavation, Inc. v. Md.
Lloyds Ins. Co., 35 S.W.3d 1, 5 (Tex. 2000) (Once the Texas Supreme Court
and courts of appeals Aconstrue
a statute and the Legislature re-enacts or codifies that statute without
substantial change, we presume that the Legislature has adopted the judicial
interpretation.@); Sharp
v. House of Lloyd, Inc., 815 S.W.2d 245, 248 (Tex. 1991) (A>[A]
statute of doubtful meaning that has been construed by the proper
administrative officers, when re-enacted without any substantial change in
verbiage, will ordinarily receive the same construction.=  This rule is only applicable where there has
been an affirmative long-standing administrative policy.@)
(quoting Humble Oil & Ref. Co. v. Calvert, 414 S.W.2d 172, 180 (Tex.
1967)); Tex. Employers=
Ins. Ass=n v.
Holmes, 196 S.W.2d 390, 395 (Tex. 1946) (AThere
is another well-settled rule to guide us in the construction of a statute which
is uncertain and ambiguous . . . : >Where
a statute which has been construed, either by a court of last resort or by
executive officers, is re-enacted without any substantial change of verbiage,
it will continue to receive the same construction.=@); Tex.
Fid. & Bonding Co. v. City of Austin, 246 S.W. 1026, 1029 (Tex. 1922) (AIt is an elementary rule of
construction that where, after a statute has been construed by the highest
court of the state, the Legislature re-enacts the statute, whether by the
adoption of Revised Statutes or by amendment, the act of the Legislature
carries with it the construction previously placed upon the law by the court.@).

If
the statutory text is unambiguous, a court must adopt the interpretation
supported by the statute=s
plain language unless that interpretation would lead to absurd results.  See Tune v. Tex.
Dep=t
of Pub. Safety, 23 S.W.3d 358, 363 (Tex. 2000) (AWe
must enforce the plain meaning of an unambiguous statute.@); RepublicBank
Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605,
607 (Tex. 1985) (AUnless a
statute is ambiguous, we must follow the clear language of the statute.@); Brazos River Auth. v. City of
Graham, 354 S.W.2d 99, 109 n.3 (Tex. 1962) (A[O]perating as we are under a strict theoretical division of
governmental powers, it would take a bit of doing on the part of the judiciary
to say, in the absence of ambiguous and uncertain statement or patent and
manifest absurdity, that the Legislature intended something different from the
clear import of the words chosen by it . . . .@);
Gilmore v. Waples, 188 S.W. 1037, 1039 (Tex.
1916) (The literal meaning of a statute may be disregarded Aonly where it is perfectly plain that
the literal sense works an absurdity or manifest injustice.@).

IV

An
extensive review of the three model state administrative procedure acts, the
Texas Administrative Procedure Act, and the TDPRS=s
1997 sunset review legislation is necessary to resolve this case.

In
1946, the Commissioners on Uniform State Laws issued the first Model State
Administrative Procedure Act.  Model State Admin. Procedure Act, 9C
U.L.A. 179 (1957).  Because it governed
rulemaking, adjudication, and judicial review, the 1946 model act was
considered Acomprehensive.@ 
Arthur Earl Bonfield, The Federal APA
and State Administrative Law, 72 Va.
L. Rev. 297, 303 (1986).  Section 12 of the 1946 model act was titled AJudicial Review of Contested Cases,@ and subsection (1) thereof provided: AAny person aggrieved by a final
decision in a contested case, whether such decision is affirmative or negative
in form, is entitled to judicial review thereof under this act [but nothing
in this section shall be deemed to prevent resort to other means of review,
redress, relief or trial de novo, provided by law].@  Model
State Admin. Procedure Act '
12(1), 9C U.L.A. 179, 183 (1957) (emphasis added).  Section 12(1) has been interpreted as
granting an independent right to judicial review by both the courts[6]
and commentators.[7]  At least ten states enacted comprehensive
administrative procedure acts based in whole or part on the 1946 model act.

In
1951, twenty-four years before the Legislature enacted a comprehensive
administrative procedure act, this Court addressed the availability of judicial
review of state administrative action:

 

When
the legislature creates an administrative agency, the legislature may prescribe
rules and regulations governing the administrative body and the method by which
the rights determined by such body shall be enforced.  Judicial review of administrative action may
be specifically provided or specifically denied by the legislature . . . .  Or the legislature may simply be silent upon
the subject.  Although the legislature
specifically denies judicial review, decisions of an administrative body may be
attacked in court if they violate some provision of the State or Federal Constitution.  But all other decisions of such an
administrative body which do not affect vested property rights or otherwise
violate some constitutional provision are valid, and the mere fact that the
legislature has denied judicial review does not invalidate them.  The corollary of this proposition is that the
courts should recognize an inherent right of appeal from an administrative body
created by an act silent on the question of appeal only where the
administrative action complained of violates a constitutional provision.

 

City of
Amarillo v. Hancock, 239 S.W.2d 788, 790 (Tex.
1951) (citations omitted) (emphasis in original).

In
1953, a proposed Texas
administrative procedure act was published in the state bar journal.  Administrative Procedure Act, 16 Tex. B.J. 14 (1953).  The comprehensive act was drafted by the
State Bar Committee on Administrative Procedure.  Article 42-23 of the act, titled AJudicial Review.COrders,@ provided:

 

(a)
Any person adversely affected by a decision of an agency may seek judicial
review of the decision by filing suit against the agency in the District Court
of Travis County, or of any county in which venue properly lies, for the
purpose of setting aside the order complained of, whether affirmative or
negative in form, . . . .

 

.
. . .

 

(d)
Scope of review of agency decisions shall be in accordance with applicable
statutes.  Where statutes do not provide
for scope of review the court shall determine whether the statute or regulation
pursuant to which the agency acted or the order issued thereunder
is unconstitutional, whether the decision is in excess of the statutory
authority or jurisdiction of the agency, whether the decision was made pursuant
to unlawful procedure or is affected by other error of law affecting
substantial rights of the petitioner, and whether the decision is arbitrary,
capricious or unreasonable.

 

Id.
at 48-49.

In
1955, an article regarding the state bar=s
proposed act was published in the Texas Law Review.  George W. Terry, Comment, The Proposed Texas
Administrative Procedure Act, 33 Texas L. Rev. 499 (1955).  After noting that the act apparently provided
an independent right to judicial review of both rules and orders, the author
asked: A[I]s it
wise to make judicial review a matter of right in all cases covered by this
general administrative procedure act even though the legislature, in creating
the agency, did not provide for review?@  Id.
at 508.  In the conclusion, he stated:

 

The
Proposed Act presents no great departure from the Model Act or the
administrative procedure acts of other states . . . .

 

However,
the Proposed Act seems faulty in a few particulars discussed above: namely, (1)
it fails to ensure effective notice of rule-making; (2) it confers a right
to judicial review in both rule-making and adjudication where previously none
was recognized; (3) it leaves in doubt the question whether a petition for
reconsideration of an adjudicative decision must precede a petition for
judicial review.  Perhaps these
deficiencies will be corrected before the Proposed Act becomes law.

 

Id.
at 516 (emphasis added).

In
1957, the Texas Civil Judicial Council[8]
published a report on administrative procedure acts, with Aparticular emphasis upon the proposed
Texas Act, the Model Act, and the Federal Act.@  Texas
Civil Judicial Council, Administrative Procedure Laws in the United States: A Comparative Study
(1957) (available at State Law Library). 
The twenty-nine page report was addressed to the Legislature, Governor,
and Supreme Court.  In the section
concerning judicial review, the report stated:

 

All
but one of the procedure laws have provided for judicial review of
administrative proceedings.  All of the
acts with these provisions make them applicable, as does the Model Act, to
administrative decisions in Acontested
cases@ (or
whatever equivalent term is used in the particular act), but five are broader
in their application in that they specifically or impliedly permit judicial
review to be extended to rules and regulations as well as administrative
adjudication.  These five are the
statutes of California, Ohio,
Massachusetts, the Proposed Texas
Act and the Federal Act.

 

. .
. .

 

The
Federal Act assures the right of judicial review to any person suffering from
legal wrong or adversely affected by agency action, except where federal
statutes preclude it and where agency action is by law committed to agency
discretion.

 

. .
. .

 

Under
the Proposed Texas
Act, judicial review is authorized for both regulations and orders; it may
be sought by any person adversely affected by agency action.

 

Id.
at 21-23 (emphasis added).  In addition,
the report quoted in full the conclusion of the 1955 Texas Law Review article,
including the author=s
concern that the proposed act Aconfers
a right to judicial review in both rule-making and adjudication where
previously none was recognized.@  Id.
at 29.

In
1961, the Commissioners on Uniform State Laws issued a revised Model State
Administrative Procedure Act.  Model State Admin. Procedure Act
(1961), 15 U.L.A. 184 (2000).  Section 15
of the 1961 model act was titled AJudicial
Review of Contested Cases,@
and subsection (a) thereof provided:

 

A
person who has exhausted all administrative remedies available within the
agency and who is aggrieved by a final decision in a contested case is
entitled to judicial review under this Act. 
This Section does not limit utilization of or the scope of judicial
review available under other means of review, redress, relief, or trial de novo
provided by law.  A preliminary,
procedural, or intermediate agency action or ruling is immediately reviewable
if review of the final agency decision would not provide an adequate remedy.

 

Model State Admin. Procedure Act (1961)
' 15(a), 15A U.L.A. 11 (2000) (emphasis
added).  The official comment to section
15 states:

 

An
important question that arises under subsection (a) is whether or not the
review provisions should be made exclusive and all other review provisions on
the statute books should be repealed. 
Each state will have to deal with this matter as the local circumstances
dictate.  On the one hand, if there is
but one mode and scope of review, the state procedural structure is greatly
simplified.  On the other hand, local
considerations, including practical considerations connected with obtaining adoption
of the Model Act, may indicate or even require the retention, at least for the
moment, of the pre-existing methods of judicial review.

 

Id.
' 15 cmt., at
13.  A majority of states, including Texas,
has enacted comprehensive administrative procedure acts based in whole or part
on either the original 1946 model act or the 1961 revision.

In
1963, Professor Bloomenthal of the University of
Wyoming College of Law authored an article on the 1961 model act.  Harold S. Bloomenthal,
The Revised Model State
Administrative Procedure ActCReform
or Retrogression?, 1963 Duke L.J.
593.  Discussing the availability of
judicial review of administrative action in general, he stated:

 

Many
statutes relating to administrative agencies and action expressly provide that
specified types of administrative decisions are subject to judicial
review.  Generally, these review
provisions relate to administrative adjudication (contested cases),
infrequently to rule making, and occasionally to executive action.  However, a number of statutes in some states
relating to agencies with powers of adjudication do not include review
provisions.  On the federal level there
appears to be a reasonably well developed doctrine that unless a statute
affirmatively precludes judicial review, there is a common law right of
judicial review of administrative action. 
The decisions on the state level are inconclusive.  The Model Act as revised expressly
provides that final decisions in all contested cases are reviewable by the
courts and that the validity of all administrative rules and regulations may be
determined in an action for a declaratory judgment.  The revised Model Act contains no provision
for reviewing executive action, that is, administrative action that can be
classified neither as adjudication nor rule making.

 

Id.
at 622-23 (footnotes omitted) (emphasis added).

In
1965, Professor Cooper of The University of Michigan Law School authored an
important treatise on state administrative law. 
Frank E. Cooper, State
Administrative Law (1965).  Cooper
had been intimately involved with the 1961 revision of the 1946 model act.  In his treatise, Cooper stated:

 

The
Revised Model
 State Act grants a
right of judicial review of Aa
final decision@
in a contested case and of certain preliminary orders . . . .  Many state statutes grant a right of appeal
only from final orders.  Even in states
not having a specific statutory requirement to this effect, the courts
ordinarily hold that only final agency orders are reviewable.  As yet, only a small number of states have
adopted statutes providing for review of preliminary orders, where necessary to
avoid an injustice.

 

2 id. at
588 (citations omitted) (emphasis added).

In
1967, in Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), the United
States Supreme Court reaffirmed the presumption that judicial review of federal
administrative action is available.  At
that time, the Federal Administrative Procedure Act provided: AA person suffering legal wrong because
of agency action, or adversely affected or aggrieved by agency action within
the meaning of a relevant statute, is entitled to judicial review
thereof.@  5 U.S.C. '
702 (Supp. III 1964) (emphasis added).  With regard to the availability of judicial
review, the Supreme Court stated:

 

The
first question we consider is whether Congress by the Federal Food, Drug, and
Cosmetic Act intended to forbid pre-enforcement review of this sort of
regulation promulgated by the Commissioner. 
The question is phrased in terms of Aprohibition@ rather than Aauthorization@ because a survey of our cases shows
that judicial review of a final agency action by an aggrieved person will not
be cut off unless there is persuasive reason to believe that such was the
purpose of Congress.  Early cases in
which this type of judicial review was entertained, [omitted citations include Stark
v. Wickard, 321 U.S. 288 (1944)], have been
reinforced by the enactment of the Administrative Procedure Act, which embodies
the basic presumption of judicial review to one Asuffering
legal wrong because of agency action, or adversely affected or aggrieved by
agency action within the meaning of a relevant statute,@
so long as no statute precludes such relief or the action is not one committed
by law to agency discretion.

 

Abbott Labs.,
387 U.S. at
139-40 (citations omitted); see also Hayes Int=l Corp. v. McLucas, 509 F.2d 247,
259 (5th Cir. 1975) (AClearly
the absence of statutory language expressly authorizing judicial review is
insufficient to offset the presumption that [federal] administrative action is
reviewable.  >Indeed,
judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated.= 
However, >[a]
clear command of the statute will preclude review; and such a command of the
statute may be inferred from its purpose.=@) (quoting Barlow v. Collins,
397 U.S. 159,
166 (1970)).

In
1971, legislation providing for a comprehensive Texas
administrative procedure act was filed in both the Senate[9]
and the House.  See Tex. S.B. 16,
62d Leg., R.S. (1971); Tex. H.B. 761, 62d Leg., R.S. (1971) (available at State
Archives).  Section 17(a) of both the
Senate and House bills provided: AA
person who has exhausted all administrative remedies available within the
agency and who is aggrieved by a final decision in a contested case as defined
in Section 3(2) is entitled to judicial review under this Act.  A preliminary, procedural, or intermediate
agency action or ruling is immediately reviewable if review of the final agency
decision would not provide an adequate remedy.@  Tex. S.B. 16 '
17(a); Tex. H.B. 761 '
17(a) (emphasis added).  Neither bill was
passed out of legislative committee.  In
1973, similar legislation was introduced in both houses containing identical
section 17(a) language.  See Tex.
S.B. 81, 63d Leg., R.S. (1973); Tex. H.B. 248, 63d Leg., R.S. (1973) (available
at Legislative Reference Library).  The
Senate passed its bill, but both the Senate bill and the House bill died in a
House committee.

In
1975, legislation was again filed that provided for a comprehensive
administrative procedure act.  See
Tex. S.B. 41, 64th Leg., R.S. (1975); Tex. H.B. 531, 64th Leg., R.S. (1975);
Tex. H.B. 1106, 64th Leg., R.S. (1975) (available at Legislative Reference
Library).  Senate Bill 41, as amended,
was enacted during that legislative session. 
Section 17(a) of Senate Bill 41, as introduced, provided: AA person who has exhausted all
administrative remedies available within the agency and who is aggrieved by a
final decision in a contested case as defined in Section 3(2) is entitled to
judicial review under this Act.  A
preliminary, procedural, or intermediate agency action or ruling is immediately
reviewable if review of the final agency decision would not provide an adequate
remedy.@  Tex. S.B. 41 (emphasis added).

On
January 30th, the introduced version of Senate Bill 41 was considered in
committee.  See Hearings on
Tex. S.B. 41 Before the Senate Intergovernmental Relations Comm., 64th
Leg., R.S. (Jan. 30, 1975) (transcript available at Legislative Reference
Library).  David Young, chief counsel for
the Texas Department of Public Welfare (DPW),
was one of the many agency representatives who testified at the hearing.

Young
advised the Senate committee that certain contested-case decisions of the DPW
were not currently subject to judicial review and that, in his view, the
proposed act would both waive sovereign immunity and authorize judicial review
of those contested-case decisions.  Id.
at 12-13.  He further stated that Abecause we have about a volume of some
800 hearings a month in the Aid to Dependent Children program we can expect a
very heavy influx of litigation on what amount[s] to relatively small amounts
of money.@  Id.
at 13.  A committee member immediately
raised the question of how many new district courts would have to be created to
handle those appeals.  Committee members
and Young then discussed solving the problem by exempting the relevant DPW
contested-case decisions from the act.  Id.
at 13-15.  No committee member or witness
contested Young=s
assertion that Senate Bill 41 would provide a right to judicial review.

On
February 5th, the following floor amendment to Senate Bill 41 was adopted: A19. EXCEPTIONS. The provisions of this
Act shall not apply to the financial and medical assistance and service
programs of the State Department of Public Welfare.@  S.J.
of Tex., 64th Leg., R.S. 184, 191
(1975).  The substance of the exemption
was retained throughout the legislative process and is currently codified in
section 2001.223 of the APA.  See Tex. Gov=t Code '
2001.223.

The
Administrative Procedure and Texas Register Act[10]
became effective on January
 1, 1976.  APTRA, 64th Leg.,
R.S., ch. 61, 1975 Tex. Gen. Laws 136, 148.  Section 3(2) of the APTRA provided: A>Contested
case= means a
proceeding, including but not restricted to ratemaking and licensing, in which
the legal rights, duties, or privileges of a party are to be determined by an
agency after an opportunity for adjudicative hearing.@  Id.
' 3(2), at 137.  And section 12 provided:

 

The validity or
applicability of any rule, including an emergency rule adopted under Section
5(d) of this Act, may be determined in an action for declaratory judgment in a
district court of Travis County, and not elsewhere, if it is alleged that the
rule, or its threatened application, interferes with or impairs, or threatens
to interfere with or impair, the legal rights or privileges of the plaintiff.

 

Id.
' 12, at 141.

Section
19 of the APTRA provided:

 

(a)
A person who has exhausted all administrative remedies available within the
agency and who is aggrieved by a final decision in a contested case is
entitled to judicial review under this Act. 
This section is cumulative of other means of redress provided by
statute.

 

. .
. .

 

(e)
The scope of judicial review of agency decisions is as provided by the law
under which review is sought.  Where the
law authorizes appeal by trial de novo, the courts shall try the case in the
manner applicable to other civil suits in this state and as though there had
been no intervening agency action or decision. 
Where the law authorizes review under the substantial evidence rule, or
where the law does not define the scope of judicial review, the court may not
substitute its judgment for that of the agency as to the weight of the evidence
on questions committed to agency discretion but may affirm the decision of the
agency in whole or in part and shall reverse or remand the case for further
proceedings if substantial rights of the appellant have been prejudiced because
the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) not reasonably supported by substantial evidence in view
of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of
discretion or clearly unwarranted exercise of discretion.

 

Id.
' 19, at 146-47 (emphasis added).  Section 22 contained a general repealer.  Id.
' 22, at 148.  The APTRA did not specifically repeal or
amend any pre-existing statutory judicial review provisions.

In
1976, Professor Hamilton of The University of Texas School of Law co-authored
an article regarding the APTRA.  Robert
W. Hamilton & J.J. Jewett, III, The
Administrative Procedure and Texas
Register Act: Contested Cases and Judicial Review, 54 Texas L. Rev. 285
(1976).  The article did not discuss
whether section 19(a) of the APTRA provided an independent right to judicial
review when an agency enabling statute neither specifically authorized nor
prohibited judicial review.  However, in
the following passage, the authors assumed that section 19(a) provided an
independent right to judicial review:

 

It
is important that in the future the legislature clearly specify the desired
manner of review.  Indeed, more or less
standardized language would be desirable to ensure that no ambiguity exists as
to the intended manner of review.  We
have examined the legislative work-product of the sixty-fourth Texas
Legislature, the session that enacted the APTRA, and by our unofficial
headcount the legislature enacted or re-enacted legislation calling
definitively for Atrial de
novo@ in only
three instances.  In contrast, the
language of nine statutes, including two recodifications,
clearly indicates that the substantial evidence rule is applicable.  In at least four instances involving
obvious contested cases there is no specific judicial review provision.  Under section 19, appeals in these cases will
also be governed by the substantial evidence rule.  Three statutes, however, include provisions
relating to judicial review apparently without regard to the distinctions set
forth in section 19.

 

Id.
at 308-09 (footnotes omitted) (emphasis added).

In
the footnote following the first sentence emphasized above, the authors cited
four statutes, one of which was AAuctioneersBRegulation, Tex. Rev. Civ. Stat. Ann. art. 8700
(Supp. 1975).@  Id.
at 309 n.110.  The statute was
comprehensive, providing inter alia for the denial,
suspension, and revocation of the required auctioneer=s
license.  See Act of May 21, 1975, 64th Leg.,
R.S., ch. 320, 1975 Tex. Gen. Laws 827, 829.  It was silent with regard to the availability
or scope of judicial review. 
Nonetheless, Hamilton and Jewett assumed that judicial review was
available under section 19(a) of the APTRA and concluded that substantial
evidence was the applicable scope of review.

In
1977, the Legislature enacted the Alcoholic Beverage Code, a nonsubstantive revision. 
Alcoholic Beverage Code, 65th Leg., R.S., ch.
194, 1977 Tex. Gen. Laws 391.  The revisor=s
notes that accompanied the proposed codification reflect that the code drafters
believed section 19(a) of the APTRA guaranteed a right to judicial review.  Section 11.67 of the Alcoholic Beverage Code
governs judicial review of administrative orders regarding liquor licenses, and
its revisor=s
note stated:

 

The
revised law omits the provision in the source law denying appeal from certain
orders because this provision was impliedly repealed by Section 19 of the
Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon=s Texas Civil Statutes).

 

Tex. Alco. Bev. Code Ann. '
11.67 revisor=s
note (Vernon 1995).  Similarly, section 61.81 governs judicial
review of administrative orders regarding beer licenses and its revisor=s
note stated:

 

The
provision in the source law denying appeal in certain circumstances is omitted
since it conflicts with Subsection (a), Section 19 of the Administrative
Procedure and Texas Register Act (Article 6252-13a, Vernon=s Texas Civil Statutes).  That section provides, AA person who has exhausted all
administrative remedies available within the agency and who is aggrieved by a
final decision in a contested case is entitled to judicial review under this
Act.@

 

Id.
' 61.81 revisor=s note.

In
1978, this Court decided Southwestern Bell Telephone Co. v. Public Utility
Commission, 571 S.W.2d 503 (Tex.
1978).  Because the Public Utility
Commission=s
enabling statute specifically authorized judicial review of the commission=s orders, the question of whether
section 19(a) provided an independent right to judicial review was not
raised.  However, the Court resolved an
important question regarding the remainder of section 19 and expressed its view
of the Legislature=s intent
in enacting the APTRA.  After setting out
the entire text of section 19, the Court stated:

 

A
complete reading of the section reveals that in contested cases there are now
provided only two types of reviewCpure
trial de novo or review confined to the agency record.  We think the court of appeals fails to
recognize the far-reaching changes intended by the adoption of the
Administrative Procedure Act.

 

Id.
at 508.

In
1977 and 1979, three courts of appeals reached different conclusions regarding
whether section 19(a) of the APTRA provided an independent right to judicial
review when the agency enabling statute neither specifically authorized nor
prohibited judicial review.  In both Moore
v. Texas Employment Commission, 565 S.W.2d 246, 247 (Tex. Civ. App.CHouston
[14th Dist.] 1977, no writ) and Texas Health Facilities Commission v. West
Texas Home Health Agency, 588 S.W.2d 655, 657 (Tex. Civ.
App.CWaco 1979,
no writ), the courts concluded, with limited analysis, that section 19(a) did
provide an independent right to judicial review.

In
Motorola, Inc. v. Bullock, 586 S.W.2d 706, 708-09 (Tex. Civ. App.CAustin
1979, no writ), the Third Court of Appeals concluded that section 19(a) of the
APTRA did not provide an independent right to judicial review, stating:

 

The
Legislature with laudable care sought to avoid conflict between the general
procedure outlined in section 19 and any other statute or law, with final
specification [in section 19(e)] that the scope of judicial review of agency
decisions would follow Athe
law under which review is sought.@  Nowhere do we find an attempt to grant a
substantive right not provided by other statutes or laws.

 

Id.
at 709.  However, the court failed to
quote, analyze the plain meaning of, or otherwise directly address the first
sentence of section 19(a).[11]

In
1981, in Hooks v. Texas Department of Water Resources, 611 S.W.2d 417 (Tex.
1981), this Court addressed another important question regarding the APTRA: the
interaction between section 19(a) and agency enabling statutes that
specifically authorize judicial review.[12]  Overturning the Third Court of Appeals=s judgment, the Supreme Court stated:

 

Section
19(a) of the APA provides that A[a] person who has exhausted all
administrative remedies available within the agency and who is aggrieved by a
final decision in a contested case is entitled to judicial review under this
Act.@  It further provides A[t]his
section is cumulative of other means of redress available [sic] by statute.@ 
Id.  The Hooks appealed the order granting the
waste discharge permit pursuant to the judicial review provisions of the Texas
Water Code.  Section 5.351(a), Tex. Water
Code Ann., provides that A[a]
person affected by a ruling, order, decision, or other act of the department
may file a petition to review, set aside, modify, or suspend the act of the
department.@  The judicial review provisions of the APA
and the Water Code should be read in conjunction and harmony with each other.  The terms Aaggrieved@ and Aaffected@ are synonymous and both relate to the
requirement that a person show a Ajusticiable interest.@

 

Id. at
419 (citation omitted) (emphasis added); see also Ingle v. Bullock, 578
S.W.2d 193, 193-94 (Tex. Civ. App.CAustin 1979, writ ref=d) (concluding that a person seeking
judicial review under section 19(a) of the APTRA must satisfy additional
prerequisites for judicial review contained in an agency enabling statuteCin this case, prepayment of a disputed
tax assessment).

Also
in 1981, the Commissioners on Uniform State Laws issued the third Model State
Administrative Procedure Act.  Model State Admin. Procedure Act
(1981), 15 U.L.A. 1 (2000).  Section
5-102 of the 1981 model act is titled AFinal
Agency Action Reviewable,@
and subsection (a) thereof provides:

 

A
person who qualifies under this Act regarding (i)
standing (Section 5-106), (ii) exhaustion of administrative remedies (Section
5-107), and (iii) time for filing the petition for review (Section 5-108), and
other applicable provisions of law regarding bond, compliance, and other
pre-conditions is entitled to judicial review of final agency action,
whether or not the person has sought judicial review of any related non-final
agency action.

 

Id.
' 5-102(a), at 119 (emphasis
added).  The official comment to section
5-102 states: ASubsection
(a) ties together the threshold requirements for obtaining judicial review of
final agency action, and guarantees the right to judicial review if these requirements
are met.@  Id.
' 5-102 cmt.,
at 119.  Only three states have adopted
the 1981 model act in whole or part.

Certain
statements contained in Third Court of Appeals=s
opinions issued after Motorola, Inc. appear inconsistent with the
holding in that case.  For example, in Bank
of Woodson v. Stewart, 632 S.W.2d 950 (Tex. App.CAustin
1982), dism=d
as moot, 641 S.W.2d 230 (Tex.
1982), the court of appeals, in determining the trial court=s jurisdiction, stated:

 

[T]he
right to challenge administrative agency actions, by an original action in
district court, on the basis that such actions unconstitutionally deprive the
plaintiff of a vested property right, is a right to judicial review distinctly
different from the right to such review which is given in the Texas
Administrative Procedure and Texas Register Act (APTRA), Tex. Rev. Civ. Stat. Ann. art. 6252-13a, ''
12, 19.  This right is equally distinct
and different from the right to judicial review conferred in numerous other
statutes which delegate portions of the State=s
police power to various administrative agencies, prescribe how and on what
conditions the delegated power may be exercised, and provide for judicial
review of specific instances where the power is exercised, frequently by suit
in a district court of Travis County, Texas.

 

Id.
at 956-57 (footnote omitted).  The
footnote following the first sentence quoted above stated:

 

APTRA
'' 12 and 19 authorize judicial
review of two different kinds of administrative action: rule making and
adjudications.  In either case, judicial
review is made exclusive in the district courts of Travis
 County.

Section
12 empowers the Travis County
district courts to hear and determine by declaratory judgment the plaintiff=s allegations that an agency rule
interferes with or impairs a plaintiff=s
legal rights . . . .

 

Section
19 empowers the Travis County
district courts to review for errors of law the final order and the proceedings
in any Acontested
case@ adjudicated
in an agency in its exercise of that portion of the State police power assigned
to the agency and delegated to it by statute.

 

Id.
at 956 n.4.

In
1986, on motion for rehearing, this Court issued a per curiam
opinion in Employees Retirement System v. Blount, 709 S.W.2d 646 (Tex.
1986).  The case is important because
review of the Third Court of Appeals=s
opinion, the parties=
briefing, the legislative action taken while the case was pending, and this
Court=s opinion
reveals a common understanding at that time among the Attorney General, the
Legislature, and the Supreme Court that section 19(a) of the APTRA provided an
independent right to judicial review.

In
the trial court and the court of appeals, the parties agreed that the Employees
Retirement System (ERS) had statutory
authority to resolve a contractual dispute between Blount and Metropolitan Life
Insurance Company in a contested-case hearing and that, although the ERS=s enabling statute did not specifically
authorize judicial review of the decision, judicial review was available under
section 19(a) of the APTRA.  The court of
appeals, sua sponte,
questioned whether the ERS was empowered to
adjudicate the dispute.  See Blount
v. Metro. Life Ins. Co., 677 S.W.2d 565, 569 (Tex. App.CAustin 1984), rev=d, 709 S.W.2d 646 (Tex.
1986).

The
Third Court of Appeals stated:

 

The
[Texas Employees Uniform Group Insurance Benefits Act] establishes a framework
for the purchase of group life, accident, and health insurance for State
employees.  Section 4 of the Act vests in
a Atrustee@
the sole power to administer and implement the Act.  The Atrustee@ so empowered is the State Board of
Trustees of the Employees Retirement System . . . .

 

In
addition, ' 4(e) of
the Act provides that the trustee shall have full power and authority as to the
following:

 

[E]stablishment of grievance procedures by which the trustee
shall act as an appeals body for complaints by employees regarding the
allowance and payment of claims, eligibility, and other matters.

 

Nothing
in the Act, unless it be this subsection, purports to vest in the trustee a
power to adjudicate claims on a group life insurance contract entered into by
the trustee under the Act.[1] 
The parties have assumed that '
4(e) does give the trustee a power to adjudicate such claims and the
trial court judgment rests upon the assumption that the trustee has such power.

 

Id.
at 568-70 (text of footnote 1 omitted) (emphasis in original).  In footnote number one, the court stated that
A[t]he judicial review provisions of
APTRA ' 19
ensure that judicial review is available in a [contested-case hearing].  APTRA ''
3(2), 19(a).@  Id.
at 569 n.1.  The court later noted that
the ERS=s
enabling statute Adoes not
provide for judicial review at all in the matter of ordinary contract actions
and defenses.@  Id.
at 572.  After determining that the ERS
lacked statutory authority to adjudicate the dispute, the court stated:

 

We
hold, accordingly, that the trial court proceeded on the wrong theory in its
adjudication of Mrs. Blount=s
claim under the substantial evidence rule and as a contested case defined by
APTRA '
3(2).  In the interests of justice, we
reverse the judgment of the trial court and remand the cause for a new trial as
an ordinary common-law action on or for breach of the insurance contract.

 

Id.
at 573.

In
the ERS=s
application for writ of error, the Attorney General argued that Athe Legislature provided for an
administrative procedure which affords [state] employees the right of judicial
review under the APA '
19 which may not be defeated by a defense of sovereign immunity@ and that A[o]nce the Trustee made its determination, applying the
standards set out in the contract for insurance, [Blount] was entitled to seek
appeal of the Trustee=s
decision to the district court under the substantial evidence rule stated in APA
' 19.@  Application for Writ of Error for Employees
Retirement System at 10-11, 19, Employees Ret. Sys. v. Blount, 709
S.W.2d 646 (Tex. 1986) (cause no.
C-3448) (filed Oct. 22,
 1984) (available at Supreme Court).

In
conclusion, the Attorney General stated:

 

The
Court of Appeals failed to consider this appeal as an administrative decision
reviewable under the APA ' 19 and the substantial evidence
rule.  Remand to the trial court for
retrial of the facts decided by the Trustee is improper under that standard for
review.  This decision should be reversed
and remanded for review of the Trustee=s
Order as a valid decision in a contested case, by an administrative agency.

 

Id.
at 21.

While
the case was pending before the Supreme Court, the Legislature amended the
relevant enabling statute.  See
Act of May 9, 1985,
69th Leg., R.S., ch. 155, 1985 Tex. Gen. Laws 685.[13]  Senate Bill 771 was a direct response to the
Third Court of Appeals=s
decision.[14]  Although the enactment provided that the
final administrative decision of the ERS was
a Acontested case under the Administrative
Procedure and Texas Register Act@
and that Athe
standard of review is by substantial evidence,@
it did not expressly authorize judicial review. 
Instead, the Legislature relied on the independent right to judicial
review provided by section 19(a) of the APTRA.[15]  The enactment became effective on May 24, 1985.

On
August 1, 1985,
the ERS and Metropolitan Life Insurance
Company filed a joint motion for rehearing. 
They informed the Supreme Court of the legislative reaction to the Third
Court of Appeals=s opinion
and asserted:

 

[T]hese amendments indicate that the intent of the Legislature
all along has been to grant the Trustees of the Employees Retirement System
final, binding authority to adjudicate insurance claims arising under the Act,
to treat such claims as Acontested
cases,@ and to
allow appeal of the Trustee=s
decisions to the state courts only under the substantial evidence standard of
review.

 

Petitioners= Joint Motion for Rehearing for
Employees Retirement System and Metropolitan Life Insurance Company at 6, Employees
Ret. Sys. v. Blount, 709 S.W.2d 646 (Tex.
1986) (cause no. C-3448) (filed Aug. 1, 1985) (available at Supreme Court).

On
rehearing, this Court reversed the Third Court of Appeals=s judgment and affirmed the trial court=s judgment.  The Court stated that A[t]he
primary issue on appeal is whether the ERS
trustees have been granted the final binding authority to adjudicate claims of
contested cases pursuant to its enabling statute, Tex. Ins. Code Ann. art.
3.50-2 (Vernon 1981) and the
Administrative Procedure and Texas Register Act@
and concluded that Athe
agency does have such authority pursuant to Article 3.50-2 and APTRA ' 19, and that the trial court properly
reviewed the record under the substantial evidence standard.@ 
Employees Ret. Sys. v. Blount, 709 S.W.2d at 646.  This Court=s
affirmance of the trial court=s
judgment necessarily reflects its understanding that section 19(a) of the APTRA
provided Blount an independent right to judicial review.

In
1989, the Legislature enacted the Health and Safety Code, a nonsubstantive
revision.  Health and Safety Code, 71st
Leg., R.S., ch. 678, 1989 Tex. Gen. Laws 2230.  The revisor=s note to section 242.061 reflects that
the code drafters relied on the plain meaning of section 19(a) of the APTRA
when deleting, as redundant and therefore unnecessary, a provision contained in
the underlying source law that specifically authorized judicial review.  The Legislature had enacted a comprehensive
statute in 1953 regulating nursing homes, providing inter alia
for the denial, suspension, and revocation of the required facility
license.  See Act of May
 25, 1953, 53d Leg., R.S., ch.
413, 1953 Tex. Gen. Laws 1005, 1006-07. 
The statute provided for judicial review by trial de novo.  Id.
at 1008.  In 1985 sunset review
legislation, the judicial review provision was amended to provide:

 

Sec.
10. JUDICIAL REVIEW. Any applicant or licensee aggrieved by the decision of the
Licensing Agency is entitled to judicial review in the manner provided for a
contested case under the Administrative Procedure and Texas Register Act
(Article 6252-13a, Vernon=s Texas Civil Statutes).  Judicial review under this section shall be
under the substantial evidence rule. 
Pending final disposition of the matter, the status quo of the applicant
or licensee shall be preserved except as the Court otherwise orders in the public
interest for the welfare and safeguard of the persons in the institution.

 

See Act
of May 27, 1985,
69th Leg., R.S., ch. 931, 1985 Tex. Gen. Laws 3121,
3134.

In
1989, the judicial review provision was codified as section 242.061(b) of the
Health and Safety Code, which provided:

 

(b)
The status of a person as an applicant for a license or a license holder is
preserved until final disposition of the contested matter, except as the court
having jurisdiction of a judicial review of the matter may order in the public
interest for the welfare and safety of the residents.

 

Health and
Safety Code, 71st Leg., R.S., ch. 678, 1989 Tex.
Gen. Laws 2230, 2469.  The revisor=s
note that accompanied the proposed codification stated:

 

(4)
The revised law omits as unnecessary that part of Section 10 of the source law
providing that an applicant or licensee is entitled to judicial review in the
manner provided for a contested case.  As
explained in Revisor=s
Note (3) under this section, licensing proceedings are governed by the
contested case provisions of the Administrative Procedure and Texas Register
Act (Article 6252-13a, Vernon=s Texas Civil Statutes).  Section 19(a) of that act provides that a
person who is aggrieved by a final decision in a contested case is entitled to
judicial review under the act.

 

(5)
The revised law omits as unnecessary that part of Section 10 of the source law
requiring that the substantial evidence rule be used in the judicial review of
licensing proceedings.  Section 19(e),
Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon=s Texas Civil Statutes), requires a
court reviewing a proceeding governed by the act to use the substantial
evidence rule unless the law authorizing the proceeding requires otherwise.

 

Tex. Health & Safety Code Ann. ' 242.061 revisor=s note (Vernon 2001).

In
1990, two members of the judiciary addressed in non-judicial writings whether
section 19(a) of the APTRA provided an independent right to judicial
review.  Justice Powers of the Third
Court of Appeals wrote a book about administrative rulemaking, adjudication,
and judicial review in Texas.  John
E. Powers, Agency Adjudications (1990). 
He stated: ABy its
terms, APTRA Sec. 19(a) seems to create a general statutory cause of action for
judicial review of agency decisions in contested cases.  The statutory provision has been construed,
however, as not creating such a cause of action.@  Id.
at 156.  Judge Cofer,
a senior district judge in Travis County,
authored an article concerning judicial review. 
Hume Cofer, Judicial Review of Agency Law
Decisions on Scope of Agency Authority, 42 Baylor L. Rev. 255 (1990).  He stated: ATex. Rev. Civ. Stat. Ann. art. 6252-13a, ' 19 seems to create a right of review
in addition to the statutes that create agencies and also provide for judicial
review.@  Id.
at 287 n.226.

In
May 1993, the APTRA was codified in the Government Code, a nonsubstantive
revision.  Government Code, 73d Leg.,
R.S., ch. 268, 1993 Tex. Gen. Laws 583.  The first sentence of section 19(a) became
section 2001.171, which provides: AA
person who has exhausted all administrative remedies available within a state
agency and who is aggrieved by a final decision in a contested case is
entitled to judicial review under this chapter.@  Tex.
Gov=t Code '
2001.171 (emphasis added).

In
June 1993, in Reno v. Catholic Social Services, Inc., 509 U.S. 43
(1993), the United States Supreme Court addressed again the federal presumption
in favor of judicial review.  The
consolidated case involved two separate lawsuits, each challenging a different
regulation issued by the Immigration and Naturalization Service (INS)
in administering the Immigration Reform and Control Act of 1986.  In resolving the INS=s jurisdictional challenge, the Supreme
Court stated:

 

To
be sure, a statutory source of [federal subject-matter] jurisdiction is not
lacking, since 28 U.S.C. '
1331, generally granting federal-question jurisdiction, Aconfer[s] jurisdiction on federal
courts to review agency action.@  Califano
v. Sanders, 430 U.S.
99, 105 (1977).  Neither is it fatal that
the Reform Act is silent about the type of judicial review [the] plaintiffs
seek.  We customarily refuse to treat
such silence Aas a
denial of authority to [an] aggrieved person to seek appropriate relief in the
federal courts,@ Stark
v. Wickard, 321 U.S. 288, 309 (1944), and this
custom has been Areinforced
by the enactment of the Administrative Procedure Act, which embodies the basic
presumption of judicial review to one >suffering
legal wrong because of agency action, or adversely affected or aggrieved by agency
action within the meaning of a relevant statute.=@ 
Abbott Laboratories v. Gardner, 387 U.S.
136, 140 (1967) (quoting 5 U.S.C. '
702).

 

Id.
at 56-57; see also Stockman v. Fed. Election Comm=n, 138 F.3d 144, 151 (5th Cir.
1998) (ASection
702 of the APA creates a cause of action for
>[a] person suffering legal wrong
because of agency action, or adversely affected or aggrieved by agency action
within the meaning of a relevant statute.=@).

In
December 1993, for the first time since deciding Motorola, Inc. v. Bullock
in 1979, the Third Court of Appeals held that section 2001.171 of the APA
did not Acreate a
right of judicial review.@  Southwest Airlines v. Tex. High-Speed Rail
Auth., 867 S.W.2d 154, 158 (Tex. App.CAustin
1993, writ denied).  The opinion was issued
seven months after the APTRA was codified, and eighteen years after it was
originally enacted.  With regard to
whether section 2001.171 of the APA provided
an independent right to judicial review, the court stated only:

 

Southwest
asserts that sections 2001.171 and 2001.178 provide a right to judicial review
of the Authority=s order
and presumably a waiver of governmental immunity from suit: AA person who has exhausted all
administrative remedies available within a state agency and who is aggrieved by
a final decision in a contested case is entitled to judicial review under this
chapter.@  APA ' 2001.171.  AThis
subchapter is cumulative of other means of redress provided by statute.@ 
APA '
2001.178.

 

In Motorola,
Inc., however, this Court concluded that former section 19 of APTRA, the
predecessor of APA section 2001.171, is a
procedural provision that does not extend or limit the jurisdiction of the
courts.  Section 2001.171, therefore,
does not create a right of judicial review by generally waiving the state=s immunity from suit, but instead sets
out the procedure for a suit for judicial review authorized pursuant to another
statutory provision.

 

Id.
(citations and footnotes omitted).  In
contrast, in Texas Department of Human Services v. ARA
Living Centers, 833 S.W.2d 689 (Tex. App.CAustin
1992, writ denied), the Third Court of Appeals had previously acknowledged that
section 12 of the APTRA, now section 2001.038 of the APA,
creates a cause of action to determine the validity or applicability of an
agency rule:

 

TDHS
also argues that ARA=s
suit to obtain declaratory relief is barred by the doctrine of governmental
immunity.  This assertion is also without
merit.  The legislature has, in section
12, given express statutory authorization to bring an action such as the
present one.  Accordingly, section 12
represents an express waiver of governmental immunity from suit for an action
that properly invokes that section of APTRA.

 

We
conclude, therefore, that the trial court had jurisdiction to hear the present
case and that it was not barred by the doctrine of governmental immunity.

 

Id.
at 693.

In
1995, the Third Court of Appeals decided Employees Retirement System v. Foy,
896 S.W.2d 314 (Tex. App.CAustin
1995, writ denied).  With regard to
section 2001.171 of the APA, the court
stated:

 

Foy
contends next that section 2001.171 of the APA
authorizes a cause of action for judicial review, of the kind conducted here in
the trial court, in all instances where the legislature has not provided
explicitly for such review of the decisions of a specific agency.  Section 2001.171 provides as follows: AA person who has exhausted all
administrative remedies available within a state agency and who is aggrieved by
a final decision in a contested case is entitled to a [sic] judicial review
under this chapter.@  APA ' 2001.171.  Notwithstanding the generality of section
2001.171, the legislature intended the judicial-review provisions of the APA
to be procedural only; they do not create a right to judicial review where the
right does not exist by reason of another statute specifically granting the
right.  Southwest Airlines v. Texas
High Speed Rail Auth., 867 S.W.2d 154, 158 (Tex. App.CAustin 1993, writ denied); Motorola,
Inc. v. Bullock, 586 S.W.2d 706, 708-09 (Tex. Civ.
App.CAustin
1979, no writ).  The reason is almost
self-evident.  State agencies do many
things; they make many different kinds of decisions.  These usually affect to some extent a person=s Alegal
right,@ and the
agencies may choose to take these actions only after trial-type procedures
similar to Acontested
case@
procedures required by the APA in sections
2001.001-.147.  A theory that APA
section 2001.171 entitles all persons Aaggrieved@ to Ajudicial
review@ in each
instance Ainvites
potentially serious consequences by ushering an unknown and indeterminate
number of agency proceedings into the contested case category,@ and thus into the reviewing courts,
even in such administrative controversies as the taking away of Agood time@
from thousands of state prisoners. 
Robert W. Hamilton & J.J. Jewett, III,
The Administrative Procedure and Texas
Register Act: Contested Cases and Judicial Review, 54 Tex. L. Rev. 85 [sic], 289
(1976).  It is unlikely that the
legislature intended to so overwhelm the few district courts of Travis county,
where suits under APA section 2001.171 must
be decided.

 

Id.
at 316.  Since Foy, the Third
Court of Appeals has refused to interpret broadly the term Acontested case.@  See, e.g., Best & Co. v. Tex.
State Bd. of Plumbing Exam=rs, 927 S.W.2d 306, 309 (Tex. App.CAustin 1996, writ denied) (AWe reject a proposed construction of
the definition [of contested case] that would require an agency to follow contested-case
procedures any time rights, duties, or privileges of a party are determined,
without regard to whether an adjudicative hearing is required or provided.  See Employees Retirement Sys. v. Foy,
896 S.W.2d 314, 316 (Tex.App.CAustin
1995, writ denied); Hamilton & Jewett, supra at 289-90.@) (footnote omitted).

In
1997, the Legislature enacted the Finance Code, a nonsubstantive
revision.  Finance Code, 75th Leg., R.S.,
ch. 1008, 1997 Tex. Gen. Laws 3091.  The revisor=s note to section 152.210 reflects that
the code drafters relied on the plain meaning of section 2001.171 of the APA
when deleting a provision that specifically authorized judicial review.  Section 15 of the Sale of Checks Act, the
underlying source law, granted a right of judicial review to applicants for and
holders of the required business license. 
See Act of Sept.
 4, 1986, 69th Leg., 2d C.S., ch. 16, 1986
Tex. Gen. Laws 40, 44.  Section 15 was
codified in sections 152.210 and 152.307 of the Finance Code.  See Finance Code, 75th Leg., R.S., ch. 1008, 1997 Tex. Gen. Laws 3091, 3372, 3374.  The revisor=s note for section 152.210 stated:

 

(2)
The revised law omits as unnecessary that part of Section 15, V.A.C.S. Article
489d, permitting a license holder to seek judicial review of the commissioner=s findings and order under Chapter
2001, Government Code.  Section 2001.171,
Government Code, provides that a person who has exhausted all administrative
remedies available within a state agency and who is aggrieved by a final
decision in a contested case is entitled to judicial review under Chapter 2001,
Government Code.  The provision may
therefore be omitted without substantive change.  The omitted law reads: AA licensee may seek court review of the
Commissioner=s
findings and order under Chapter 2001, Government Code.@

 

Tex. Fin. Code Ann. '
152.210 revisor=s
note (Vernon 1998); see also
id. ' 152.307 revisor=s
note (restating by reference the revisor=s note to section 152.210); id. ' 152.506 revisor=s note (stating that the provision
specifically authorizing judicial review of cease and desist orders was deleted
as unnecessary).

Also
in 1997, the Legislature passed sunset review legislation for the TDPRS (1997
enactment).  Act of May 31, 1997, 75th Leg., R.S., ch. 1022, 1997 Tex. Gen. Laws 3733.  A Sunset Advisory Commission report on the
TDPRS issued in 1996 during the legislative interim discussed sixteen
issues.  See Texas Sunset Advisory Commission, Department of
Protective and Regulatory Services: Staff Report
(1996) (available at Legislative Reference Library).  With regard to issue number fifteen, titled AImprove the Administrative Hearings
Process Through Transfer to the State Office of Administrative Hearings,@ the report stated: AThis recommendation would transfer the
Department=s APA
hearing function to the State Office of Administrative Hearings. . . .  As with the current hearings process, the
decisions by the ALJ would be final unless appealed to court.@ 
Id. at 147, 151.

Chapter
40 of the Human Resources Code contains general provisions related to the
TDPRS.  The 1997 enactment added section
40.066 to the Human Resources Code.  Act
of May 31, 1997,
75th Leg., R.S., ch. 1022, 1997 Tex. Gen. Laws 3733,
3741.  The section required the TDPRS and
the State Office of Administrative Hearings (SOAH) to Aadopt
a memorandum of understanding under which the State Office of Administrative
Hearings, on behalf of the department, conducts all contested case hearings
authorized or required by law to be conducted by the department under the
administrative procedure law, Chapter 2001, Government Code.@ 
Id.

Certain
facilities, homes, and agencies that provide child-care services are regulated
by the TDPRS under Chapter 42 of the Human Resources Code.  The 1997 enactment substantially amended section
42.072 of the Human Resources Code, which governs the revocation of a
child-care facility license.  See id.
at 3749-50.[16]  Section 42.072(b), as amended, provided that
if the TDPRS proposes to suspend, deny, revoke, or refuse to renew a person=s license, registration, or
certification, the person is entitled to a hearing conducted by the SOAH.  Id.
at 3749.  Section 42.072(e) was
deleted.  Subsection (e) had expressly
authorized de novo judicial review and provided for venue in either ATravis
 County or the county in which the
person=s
facility is located.@  Id.

The
1997 enactment also added section 42.078 to the Human Resources Code, which
contained the standardized administrative penalty language recommended by the
Sunset Advisory Commission.  See id.
at 3751-53.  Section 42.078 applied to
the holder of a child-care facility license and authorized administrative
orders imposing a monetary penalty.  The
section did not expressly authorize judicial review.  Instead, it relied on the independent right
to judicial review provided by section 2001.171 of the APA.[17]

Child-care
administrators are regulated by the TDPRS under Chapter 43 of the Human
Resources Code.  The 1997 enactment added
section 43.0106 to the Human Resources Code. 
Id. at 3755.  The section provided that if the TDPRS Aproposes to suspend, revoke, or refuse
to renew a [child-care administrator=s]
license, the person is entitled to a hearing conducted by the State Office of
Administrative Hearings.@  Id.  However, the 1997 enactment did not repeal or
amend section 43.011 of the Human Resources Code.  Section 43.011, which has not been amended
since 1979, expressly authorizes de novo judicial review of decisions denying
or revoking a child-care administrator=s
license and provides for venue only Ain
the county where the person resides.@  Tex.
Hum. Res. Code '
43.011(c)-(d).

Senate
Bill 359 was the TDPRS=s
sunset legislation.  Tex. S.B. 359, 75th
Leg., R.S. (1997) (available at Legislative Reference Library).  The final legislative bill analysis prepared
for Senate Bill 359 stated that the Alanguage
relating to a hearings and appeals process@
contained in section 42.072 of the Human Resources Code was relocated to
section 42.078.  House Comm. on Human Services, Bill Analysis (May 6, 1997), Tex. S.B. 359,
75th Leg., R.S. (1997) (available at Legislative Reference Library).[18]  In addition, the Sunset Advisory Commission
issued a post-session report that reviewed the TDPRS=s
sunset legislation.  See Sunset Advisory Commission, Summary of Sunset
Legislation: 75th Legislature 99-122 (1997) (available at Legislative
Reference Library).  The report stated
that A[t]he
Legislature adopted the Sunset Commission=s
recommendation to transfer the Department=s
administrative hearings to the State Office of Administrative Hearings.@ 
Id. at 104.  An attached bill analysis prepared by the
commission stated that the 1997 enactment Adeletes
language [from section 42.072 of the Human Resources Code] relating to a
hearing and appeal process and moves this language to section 42.078.@ 
Id. at 111.

Both
bill analyses were incorrect.  Section
42.078 of the Human Resources Code, the new administrative penalty section, did
not contain the judicial review language that had been deleted from section
42.072.

V

The
TDPRS asserts that because section 19(a) of the APTRA was not substantively
amended in 1993 when it was codified, the Legislature has adopted the Third
Court of Appeals=s
interpretation that the provision does not provide an independent right to
judicial review.  The TDPRS=s legislative acceptance argument fails
for several reasons, the simplest being that the proper interpretation of
section 2001.171 of the APA is a question of
first impression in this Court.  See
Cont=l Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d
393, 402 (Tex. 2000) (noting that
Awe have never decided this issue@). 
As stated in part III, the
legislative acceptance rule applies only when the relevant statutory provision
has been interpreted by a court of last resort or given a longstanding construction
by a proper administrative officer.

Section
2001.171 of the APA provides: AA person who has exhausted all
administrative remedies available within a state agency and who is aggrieved by
a final decision in a contested case is entitled to judicial review
under this chapter.@  Tex.
Gov=t Code '
2001.171 (emphasis added).  Mega Child
Care and the TLCCA rely on the plain language of section 2001.171.  The TDPRS asserts that section 2001.171 Acan fairly be read to set forth
necessaryCbut not sufficientCconditions that must be satisfied to
qualify for any judicial review that the Legislature has provided in the
enabling statute.@

The
Third Court of Appeals=s
interpretation of the phrase Ais
entitled to judicial review@
appears to be unique.  The TDPRS contends
that the court decisions from states with similar judicial review provisions
are mixed.  However, the TDPRS has cited
no cases from other jurisdictions that support the Third Court of Appeals=s interpretation of section 2001.171 of
the APA, and our own extensive research has
located none.  Moreover, neither Motorola,
Inc., Southwest Airlines, nor Foy has been cited by a court
outside of Texas.  In any event, we resolve the conflict among
our courts of appeals regarding the proper interpretation of section 2001.171
by applying the plain meaning rule, a well-established rule of statutory
construction in Texas.

Section
311.016 of the Government Code, part of the Code Construction Act, provides:

 

The
following constructions apply unless the context in which the word or phrase
appears necessarily requires a different construction or unless a different
construction is expressly provided by statute:

 

. .
. .

(4)
AIs entitled to@
creates or recognizes a right.

 

Tex. Gov=t Code '
311.016.  This construction is consistent
with dictionary definitions of the term Aentitle.@[19]

In
the context of the Texas Administrative Procedure Act, the phrase Ais entitled to judicial review@ is unambiguous and, therefore, the
plain language of section 2001.171 of the APA
creates an independent right to judicial review for those who satisfy the
section=s
threshold requirements.  As stated in
part III, when the text is unambiguous, a
court may disregard the interpretation supported by the statute=s plain language only if that
interpretation would lead to absurd results. 
With regard to section 2001.171, we have no basis to conclude that the
interpretation supported by its plain language would lead to absurd results.

The
TDPRS does not directly assert or cite evidence that implementation of the
plain meaning of section 2001.171 of the APACthat persons who satisfy the section=s threshold requirements are entitled
to judicial review of contested-case decisions made by state agencies subject
to the APACwould
lead to absurd results.  However, the
TDPRS relies heavily on the Third Court of Appeals=s
precedent construing section 2001.171, and in Foy, the Third Court of
Appeals stated:

 

A
theory that APA section 2001.171 entitles
all persons Aaggrieved@ to Ajudicial
review@ in each instance
Ainvites potentially serious
consequences by ushering an unknown and indeterminate number of agency
proceedings into the contested case category,@
and thus into the reviewing courts, even in such administrative controversies
as the taking away of Agood
time@ from
thousands of state prisoners.  It is
unlikely that the legislature intended to so overwhelm the few district courts
of Travis county, where suits under APA
section 2001.171 must be decided.

 

Employees
Ret. Sys. v. Foy, 896 S.W.2d 314, 316 (Tex. App.CAustin
1995, writ denied) (citation omitted).

For
various reasons, the Legislature has exempted certain state agencies and
particular administrative decisions from all or part of the APA.  For example, when originally enacted, the
APTRA contained complete exemptions for state agencies wholly financed by
federal funds, the Industrial Accident Board, institutions of higher education,
and suspensions of driver=s
licenses.  See APTRA, 64th Leg.,
R.S., ch. 61, 1975 Tex. Gen. Laws 136, 137, 147.  Since 1975, the Legislature has enacted
additional exemptions.  One of the
exemptions, section 2001.226 of the APA,
provides:

 

This
chapter does not apply to a rule or internal procedure of the Texas Department
of Criminal Justice or Texas Board of Criminal Justice that applies to an
inmate or any other person under the custody or control of the department or to
an action taken under that rule or procedure.

 

Tex. Gov=t Code '
2001.226.  This exemption, originally enacted
in 1993, addresses the hypothetical problems raised by the Third Court of
Appeals in its 1995 Foy decision concerning Asuch
administrative controversies as the taking away of >good
time= from
thousands of state prisoners.@  Foy, 896 S.W.2d at 316.

The
TDPRS asserts that section 2001.171 of the APA
neither creates a right to judicial review nor waives the state=s sovereign immunity.  Our conclusion that section 2001.171 provides
an independent right to judicial review when an agency enabling statute neither
specifically authorizes nor prohibits judicial review is, as a practical
matter, dispositive of the sovereign immunity issue.

Section 2001.174
of the APA provides:

 

If
the law authorizes review of a decision in a contested case under the
substantial evidence rule or if the law does not define the scope of judicial
review, a court may not substitute its judgment for the judgment of the state
agency on the weight of the evidence on questions committed to agency
discretion but:

(1)
may affirm the agency decision in whole or in part; and

(2)
shall reverse or remand the case for further proceedings if substantial rights
of the appellant have been prejudiced because the administrative findings,
inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency=s
statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence
considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of
discretion or clearly unwarranted exercise of discretion.

 

Tex. Gov=t Code '
2001.174.

When
providing an independent right to judicial review in section 2001.171 of the APA,
the Legislature necessarily understood that state agencies would be sued in
court by persons exercising that right, that contested-case decisions of those
agencies would be judicially reviewed under the standards set forth in section
2001.174, and that the challenged administrative decisions would be either
affirmed, reversed, or remanded as provided by section 2001.174.  Therefore, we conclude that section 2001.171
provides a limited waiver of sovereign immunity.  Cf. Tex. Educ.
Agency v. Leeper, 893 S.W.2d 432, 446 (Tex.
1994) (concluding that the Texas Uniform Declaratory Judgments Act provides a
limited waiver of governmental immunity).

Our
resolution of the sovereign immunity issue is consistent with precedent from
courts of appeals concluding that judicial review provisions waive
immunity.  See Gruber v. Tex.
State Bd. of Pharmacy, 619 S.W.2d 564, 567 (Tex. Civ.
App.CSan
Antonio 1981, no writ) (AThere
is no question that the appellant is an entitled party to judicial review under
section 19(a) [of the APTRA]. 
Consequently, the defense of sovereign immunity is not applicable . . .
.@); Stanfield v. Tex.
Dep=t
of Pub. Safety, 422 S.W.2d 14, 20 (Tex. Civ. App.CDallas 1967, writ ref=d n.r.e.) (AAppellee=s contention that the trial court
lacked jurisdiction because the suit [for judicial review] was one against an
agency of the State of Texas and
that the State cannot be sued without its express consent must be denied.  This is so for the very obvious reason that
the Legislature has [in the agency enabling statute] specifically granted such
right to bring the suit.@).

The
TDPRS asserts that, even if section 2001.171 of the APA
generally provides an independent right to judicial review, the intent of the
TDPRS=s 1997
sunset review legislation (1997 enactment) was to prohibit judicial review of
administrative decisions revoking a child-care facility license.  Section 42.072 of the Human Resources Code,
which governs the revocation of a child-care facility license, is currently
silent with regard to the availability of judicial review; its text neither
expressly authorizes nor prohibits judicial review.  See Tex. Hum. Res. Code '
42.072.  In 1997, the TDPRS=s sunset review legislation deleted
former section 42.072(e), which had expressly authorized de novo judicial
review and provided for venue in either ATravis
 County or the county in which the
person=s
facility is located.@  Act of May 31, 1997, 75th Leg., R.S., ch.
1022, 1997 Tex. Gen. Laws 3733, 3749.

The
TDPRS argues that A[h]ere,
the Legislature has expressly manifested its intent to foreclose judicial
review of the Department=s
actions@ and,
more specifically, that A[t]he
fact that the Legislature did not repeal the provision allowing for judicial
review of a child-care administrator=s
license but did repeal the provision allowing for judicial review of a
child-care facility=s license
strongly indicates its intent to eliminate the right to judicial review for the
latter category.@  In response, the TLCCA contends that A[t]he changes made to section 42.072,
as a part of a broader set of changes from the 1997 PRS
Sunset Review Process, were intended merely to streamline the PRS
contested case processCby
moving contested cases to SOAH which previously were performed by PRS
in-houseCand by
adopting standard statutory language of the Sunset Commission for agencies
involved in licensing sanctions.@

In
the 1997 enactment, the Legislature could have expressly prohibited judicial review
of contested-case decisions made under section 42.072 of the Human Resources
Code.  For example, chapter 2260 of the
Government Code establishes an administrative procedure to resolve
breach-of-contract claims against the state, and section 2260.104(f) provides: ASubchapter G, Chapter 2001 [sections
2001.171-178 of the APA], does not apply to
a [contested-case] hearing under this section.@  Tex.
Gov=t Code '
2260.104(f); see also Gen. Servs. Comm=n
v. Little-Tex
Insulation Co., 39 S.W.3d 591, 599 (Tex.
2001) (A[T]he
Legislature has expressly precluded judicial review of the administrative judge=s rulings under Chapter 2260.@).

In
this context, certain jurisdictions, including some states that have
incorporated the first sentence of section 15(a) of the 1961 model act in their
administrative procedure acts, have employed special rules of statutory
construction.  See, e.g., Holding=s Little Am. v. Bd. of County
 Comm=rs, 670
P.2d 699, 702-03 (Wyo. 1983) (AThe right of judicial review of an
administrative decision is statutory. . . . 
And, to preclude judicial review, the statute, if not specific in
withholding that review, must give clear and convincing evidence of an intent
to restrict.@).  We disagree with this approach.  Therefore, we will ascertain and effectuate
the legislative intent in this context without applying a special rule of
statutory construction.

Deleting
the language that authorized judicial review, established a de novo scope of
review, and provided for local venue from section 42.072 of the Human Resources
Code, while retaining the language that authorizes judicial review, establishes
a de novo scope of review, and provides for exclusive local venue contained in
section 43.011, is some evidence of a legislative intent to prohibit judicial
review of contested-case decisions made under section 42.072.  However, the TDPRS has provided no
legislative history regarding the 1997 enactment that reflects an intent to
prohibit judicial review of those decisions, and our own research has
discovered none.  In fact, the limited
legislative history that is available indicates an intent to maintain rather
than prohibit judicial review.

In
the absence of express statutory language prohibiting judicial review, a
legislative intent to prohibit judicial review must be established by specific
legislative history or other reliable evidence of intent.  Given the inconclusive evidence regarding
legislative intent in this case, we conclude that, in enacting the TDPRS=s 1997 sunset review legislation, the
Legislature did not intend to prohibit judicial review of contested-case
decisions made under section 42.072 of the Human Resources Code.

Based
on the foregoing, we conclude that Mega Child Care is entitled to judicial
review of the administrative decision to revoke its child-care facility
license.  Accordingly, we affirm the
court of appeals=s
judgment. 

 

 

 

 

 

 

____________________________________

Steven Wayne
Smith

Justice

 

 

Opinion delivered:      September 3, 2004

 











[1] In its pleading, the TDPRS did not raise or otherwise
discuss Mega Child Care=s failure to comply with section 2001.176(b)(1) of the
APA.  See Tex. Gov=t Code ' 2001.176(b) (AUnless
otherwise provided by statute: (1) the petition must be filed in a Travis County district court; . . . .@).





[2] The TDPRS did not make this argument below, and
therefore it was not addressed in the court of appeals=s opinions.





[3] However, the TDPRS did not discuss its legislative
acceptance argument in its brief on the merits.





[4] In support thereof, the TLCCA cited numerous revisor=s notes that accompanied proposed legislative
codifications.  The TLCCA contended the
notes reflect that code drafters relied on the plain meaning of section
2001.171 when deleting, as redundant and therefore unnecessary, provisions
contained in the underlying source law that specifically authorized judicial
review.





[5] Ronald L.
Beal, Texas Administrative Practice and Procedure (2000).





[6] See, e.g., Bay State Harness Horse Racing
& Breeding Ass=n v. State Racing Comm=n, 175
N.E.2d 244, 249 (Mass. 1961) (AJudicial review may be obtained under [Massachusetts APACenacted
in 1954] by any person aggrieved by a final decision of an agency >in an adjudicatory proceeding.=@); Md.-Nat=l
Capital Park & Planning Comm=n v. Friendship Heights, 468 A.2d 1353, 1358 (Md. Ct. Spec. App. 1984)
(Section 255(a) of the Maryland APA Areads: >(a) Right
to review C Any party aggrieved by a final decision in a
contested case, whether such decision is affirmative or negative in form, is
entitled to judicial review thereof under this subtitle.= . . .  Once the
definitional standard of a contested case is met, there is no need or
requirement for separate jurisdictional authority; entitlement to review is
provided by Section 255 of the Act.@)
(emphasis in original).





[7] See, e.g., William J. Curran & Albert M.
Sacks, The Massachusetts Administrative Procedure Act, 37 B.U. L. Rev. 70, 93 (1957) (The Massachusetts APA Aresolves legislative silence in favor of judicial
review.@); Bernard Schwartz, The Model State Administrative
Procedure ActCAnalysis and Critique, 7 Rutgers L. Rev. 431, 456 (1953) (A>Any
person,= reads section 12(1) of the Act, >aggrieved by a final decision in a contested case,
whether such decision is affirmative or negative in form, is entitled to judicial
review thereof.=  In this
language, there is a legislative restatement of the principle of Stark v. Wickard [321 U.S. 288 (1944)], that review is
available even in the absence of other express statutory provision therefor, of the requirement of >standing= on the
part of the person seeking review, and of the requirement of ripeness for
review . . . .@) (emphasis added).





[8] In 1957, council members included the Chief Justice
of the Supreme Court, two court of appeals justices, two district judges, and
the chairmen of the Senate and House Civil Judiciary Committees.  See Act of Feb. 12, 1953, 53d Leg., R.S., ch. 6, 1953 Tex. Gen. Laws 12.





[9] A bill analysis of the Senate legislation stated: AThe bill is intended to provide full and uniform
procedure for state administrative agencies. 
It was prepared by the Committee on Administrative Law of the State Bar
of Texas, using as a basis, the 1961 revised Model State Administrative
Procedure Act, a Uniform Act but changing it in some respects and adapting it
to Texas practice.@  Sen. Comm. on Jurisprudence, Bill Analysis, Tex. S.B. 16, 62d Leg., R.S. (1971) (available at
State Archives).





[10] Senate Bill 41's final legislative title read: AAn Act providing standards for state administrative
practices and procedures; providing procedures for adoption of rules by state
agencies; providing for the creation of a state register and its contents; providing
for review of state agency proceedings; providing for declaratory judgments and
procedures for judicial review . . . .@  APTRA, 64th Leg., R.S., ch.
61, 1975 Tex. Gen. Laws 136 (emphasis added).





[11] In addition, the Third Court of Appeals did not
discuss decisions from states with similar APA language.  See, e.g., Buras
v. Bd. of Trs. of Police Pension Fund, 367 So.2d
849, 851 (La. 1979) (judicial review available under state APA, which incorporated first sentence of section 15(a) of 1961 model act,
even if appeal not authorized by agency enabling statute); Rybinski
v. State Employees= Ret. Comm=n, 378 A.2d
547, 553 (Conn. 1977) (same); Minn. Pub. Interest Research Group v. Minn. Envtl. Quality Council, 237 N.W.2d 375, 382 (Minn. 1975) (same); Martin v. Harrah Indep.
Sch. Dist., 543 P.2d 1370, 1375 (Okla. 1975) (same); Elk Point Indep.
Sch. Dist. No. 3 v. State Comm=n on Elementary & Secondary Educ., 187 N.W.2d 666, 670 (S.D. 1971) (same).





[12] Whether section 19(a) of the APTRA provided an
independent right to judicial review was not before the Court.  However, in order to place a relevant legal
argument in context, the Attorney General stated: ABefore enactment of the APA, if the substantive legislation was silent on the ability to obtain
judicial review, that right was not implied except as necessary to afford due
process and protect constitutional rights. . . .  Thus, ' 19(a)
would provide a right to judicial review, not previously existing under
substantive legislation, when a proceeding qualifies as a >contested case= and
when a party is >aggrieved= by the
decision.  Given these two hurdles to
overcome, unless subsequent decisions construe >contested
case= very broadly, the additional review provided by ' 19(a) will be quite limited.@  Post Argument
Brief for Texas Department of Water Resources at 6, Hooks v. Tex. Dep=t of Water Res.,
611 S.W.2d 417 (Tex. 1981) (cause no. B-9733) (filed Jan. 29, 1981) (available at State Archives) (citations omitted).





[13] Section 1 of the enactment provided:

 

Section 4B. ADJUDICATION OF CLAIMS. (a) The executive
director of the Employees Retirement System of Texas has exclusive authority to
decide all questions relating to enrollment in or payment of claims arising
from programs or coverages provided under authority
of this Act, other than questions relating to payment of claims by a health
maintenance organization.

(b) A decision by the executive director under this
section may be appealed only to the trustee. 
An appeal to the trustee is a contested case under the Administrative
Procedure and Texas Register Act (Article 6252-13a, Vernon=s Texas Civil Statutes).

(c) On appeal of a decision made by the trustee under
this section, the standard of review is by substantial evidence.

 

Id. at 686 (emphasis in original).





[14] A House bill analysis stated: AAs proposed, S.B. 771 would authorize the Board of
Trustees of the Employment [sic] Retirement System to adopt rules of procedure
for determining contested insurance cases. 
The Administrative Procedure and Texas Register Act would be made
applicable to such cases.  Appeals from decisions
would be to the District Court of Travis County.  This bill provides statutory authority to the
Employment [sic] System of Texas to continue the practices in effect in
handling disputed insurance cases prior to the [Third Court of Appeals=s] Blount decision.@  House Comm. on Insurance, Bill Analysis, Tex. S.B. 771, 69th Leg., R.S. (1985) (available at
Legislative Reference Library).





[15] Contra Beyer v. Employees Ret. Sys.,
808 S.W.2d 622, 626 (Tex. App.CAustin 1991, writ denied) (ABy stating that the substantial-evidence rule applies >on appeal= from
the Board=s decision, [section 4B] authorizes, by necessary
implication, a suit for judicial review in a district court.  The implication is compelled because the
expression >substantial evidence= would
be meaningless otherwise.@).





[16] Section 37 of the enactment provided:

 

Sec. 42.072. LICENSE OR REGISTRATION DENIAL, SUSPENSION,
OR REVOCATION. (a) The department [division] may suspend,
deny, [or] revoke, or refuse to renew the license, registration,
or certification of approval of a facility or family home that does not
comply with the requirements of this chapter, the standards and rules of the
department, or the specific terms of the license, registration, or
certification.  The department may
revoke the probation of a person whose license or registration is suspended if
the person violates a term of the conditions of probation.

(b) If the department proposes to take an action
under Subsection (a), the person is entitled to a hearing conducted by the
State Office of Administrative Hearings. 
Proceedings for a disciplinary action are governed by the administrative
procedure law, Chapter 2001, Government Code. 
Rules of practice adopted by the board under Section 2001.004,
Government Code, applicable to the proceedings for a disciplinary action may
not conflict with rules adopted by the State Office of Administrative Hearings.  [The division shall notify the person
operating or proposing to operate a facility of the reasons for the denial or
revocation and of the person=s
right to appeal the decision within 30 days after receiving the notice.]

(c) [A person who wishes to appeal a license denial
or revocation shall notify the director by certified mail within 30 days after
receiving the notice required in Subsection (b) of this section.  The person shall send a copy of the notice of
appeal to the assigned division representative.

[(d) The denial or revocation of a license or
certification and the appeal from that action are governed by the procedure for
a contested case hearing under Chapter 2001, Government Code.

[(e) A person whose license has been denied or
revoked may challenge the decision by filing a suit in a district court of Travis County or the county in which the person=s facility is located within 30 days after receiving
the decision.  The trial shall be de
novo.

[(f) Records of the hearing shall be kept for two
years after a decision is rendered.  On
request, and at the person=s
own expense, the division shall supply a copy of the verbatim transcript of the
hearing to a person appealing a license denial or revocation in district court.

[(g) A person may continue to operate a facility
during an appeal of a license denial or revocation unless the division has
obtained injunctive relief under Section 42.074 or civil penalties under
Section 42.075 or the facility has been closed under Section 42.073.

[(h)] A person whose license, registration,
or certification is revoked may not apply for any license, registration,
or certification under this chapter before the second anniversary of the date
on which the revocation takes effect by department or court order.

(d) The department by rule may provide for denial of
an application or renewal for a licensed facility, for certification of
approval of a facility, or for registering a family home or may revoke a
facility=s license or certification or a family home=s registration based on findings of criminal history
as a result of a background or criminal history check.

 

Id. (emphasis and strikeout in original).





[17] For example, subsection (o) provided: AJudicial review of the order [imposing a monetary penalty]: (1) is instituted by
filing a petition as provided by Subchapter G, Chapter 2001, Government Code;
and (2) is under the substantial evidence rule.@  Id. at 3753 (emphasis in original).





[18] The bill analysis provided:

 

SECTION
30. Amends Section 42.072(a)-(d).

 

(a) Includes suspension and refusal to renew the
license or certification of approval of a facility as penalties for a facility
that does not comply with the rules of DPRS or specific terms of the license or
certification.  Extends to DPRS the
authority to revoke the probation of a license holder whose license is
suspended if a term of the conditions of probation is violated.

(b) Adds standard language developed by the Sunset
Commission.  Entitles licensees to a hearing
conducted by the State Office of Administrative Hearings before any sanction
may be taken against their license.

(c) Reletters subsections
and deletes language relating to a hearings and appeals process.  Relocates this language to Section 42.078.  Specifies that a person whose license,
registration, or certification is revoked may not apply for any license,
registration, or certification under this chapter until two years after the
date on which the revocation occurred.

(d) Authorizes DPRS, by rule, to provide for denial of
an application or renewal for a licensed facility or for registering a family
home or may revoke a facility=s license or a family home=s registration based on findings of criminal history as
a result of a background or criminal history check.

 

Id. (emphasis added).





[19] In the current edition of the leading legal
dictionary, Aentitle@ is
defined as: A[t]o grant a legal right to or qualify for.@  Black=s Law Dictionary 553 (7th ed. 1999). 
In Webster=s second edition, published in 1954, the term was
defined as: A[t]o give a right or legal title to; to qualify (one)
for (something) . . . .@  Webster=s New International Dictionary 854 (Merriam-Webster, 2d ed. 1954).